**ILLINOIS STATE JOURNAL–REGISTER, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 16979.

United States Court of Appeals Seventh Circuit.

June 10, 1969.

U.S.C.A. § 158(a) (1) and (a) (5), by refusing to bargain collectively with the International Mailers Union (Union), exclusive bargaining representative for the Company's 14 city and country district circulation managers working out of Company's Springfield, Illinois plant.

The Board, pursuant to Section 10(e) of the Act, as amended, 29 U.S.C.A. § 160(e), cross-petitions for enforcement of its order.[1]

The record reveals that the Company is an Illinois corporation engaged in the business of publishing daily newspapers in Springfield, Illinois. It further shows that on August 30, 1967, the Union filed a petition with the Board seeking to represent for purposes of collective bargaining the Company's city and country district managers.

Subsequent to a hearing ordered by the Thirteenth Regional Director of the Board to consider, *inter alia,* whether the district men whom the Union sought to represent were supervisory or managerial employees, the Regional Director issued a decision finding that such district managers were not supervisory or managerial employees and that they constituted a unit appropriate for the purposes of collective bargaining pursuant to Section 9(b) of the Act, as amended, 29 U.S.C.A. § 159(b). The Board denied the Company's request for review of the Regional Director's unit decision in case No. 38–RC–419.[2]

Pursuant to the Regional Director's direction, a representation election was conducted on January 17, 1968 in which a majority of the district managers designated the Union as their collective bargaining representative. On January 25, 1968, the Union was so certified.

It is undisputed that subsequent to the certification the Union requested, and continues to request, the Company to bargain collectively and that the Company has refused, and continues to refuse, to bargain with the Union.

R. Theodore Clark, Jr., Richard D. Ostrow, Chicago, Ill., for petitioner, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Michael F. Rosenblum, Atty., N. L. R. B., for respondent.

Before HASTINGS, Senior Circuit Judge, KILEY and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Illinois State Journal-Register, Inc. (Company) petitions this court, pursuant to Section 10(f) of the National Labor Relations Act (Act), as amended, 29 U.S.C.A. § 160(f), to review and set aside an order of the National Labor Relations Board (Board), issued against the petitioning-Company on June 3, 1968. The Board found the Company had engaged in unfair labor practices within the meaning of Section 8(a) (1) and 8(a) (5) of the Act, as amended, 29

1. The decision and order of the Board are reported at 171 NLRB No. 130, 1968–1 CCH NLRB ¶22,531.

2. This case is not published.

With the Company's refusal to bargain, the Union filed a charge, and the Board's General Counsel, by the officer-in-charge of Subregion 38, issued a complaint and notice of hearing on March 19, 1968 against the Company alleging violations of Section 8(a) (5) and 8(a) (1). In answer to the complaint, the Company admitted its refusal to bargain and alleged that the certification of the Union was invalid on the grounds that the district managers are not employees within the meaning of Section 2(3) of the Act, as amended, 29 U.S.C.A. § 152(3). Specifically, the Company's answer contends that the 14 district managers are supervisors within the meaning of Section 2(11), as amended, 29 U.S.C.A. § 152(11). The Company contends, therefore, that its refusal to bargain is not violative of the Act since the certification of the Union was invalid as such district men do not constitute an appropriate bargaining unit.

Thereafter, on March 27, 1968, General Counsel filed with the Board a motion for summary judgment. The motion was premised upon the Board's "rule against relitigation." Under such procedure, the Board will not relitigate in a subsequent refusal-to-bargain proceeding matters which have been considered and disposed of in a prior related representation case.[3] Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N. L. R. B. v. National Survey Service, Inc., 7 Cir., 361 F.2d 199, 204 (1966).

By the motion, General Counsel asserted that since the Company admits its continuing refusal to bargain and that since the sole issue raised by the Company's answer related to the question of the unit's propriety, which had been previously determined in Case No. 38–RC–419, a hearing with respect to the alleged unfair labor practice was unnecessary under the rule against relitigation.

In substance, the Board granted the motion on the basis of the reasoning embraced in General Counsel's motion for summary judgment.

In this case, the Company's petition for review of the Board's order in effect represents a petition for review of the Regional Director's finding and decision that the 14 district managers are employees, rather than "supervisors and/or managerial employees", and constitute a unit appropriate for the purposes of collective bargaining. This is true since the validity of the Board's order hinges on the propriety of the Regional Director's finding with respect to the issue of whether the district managers were employees within the meaning of the Act.

■■ It is axiomatic that the Board is accorded wide discretion in establishing the correct limits of a bargaining unit and is not subject to reversal unless it is arbitrary and capricious in the exercise of its discretion. N. L. R. B. v. Waukesha Lime & Stone Co., 7 Cir., 343 F.2d 504, 507 (1965); N. L. R. B. v. Weyerhaeuser Company, 7 Cir., 276 F.2d 865, 869 (1960), and cases cited therein, cert. denied, 364 U.S. 879, 81 S.Ct. 168, 5 L.Ed.2d 102. The finding reached in the instant case with respect to the question of whether the district managers were employees and constituted an appropriate bargaining unit "must be sustained if it is supported by substantial evidence on the record considered as a whole." Trailmobile Division, Pullman Incorporated v. N. L. R. B., 5 Cir., 379 F.2d 419, 422 (1967); N. L. R. B. v. Security Guard Service, Inc., 5 Cir., 384 F.2d 143 (1967).

■ After examining the record, we are satisfied that the evidence substan-

3. The recent well-reasoned decision of Pepsi-Cola Buffalo Bottling Company and Squirt-Vernors of Buffalo, Inc. v. National Labor Relations Board, 2 Cir., 409 F.2d 676, March 25, 1969, seemingly opens to question the validity and vitality of the rule against relitigation. In the instant case, neither party to the dispute sought to invoke argument with respect to the soundness of the principle of no relitigation in response to our invitation to consider such a move.

tially supports the conclusion that the Company's district managers are employees within the meaning of the Act and constitute an appropriate bargaining unit. Such a determination was reasonable and cannot be characterized as being arbitrary or capricious in nature. It necessarily follows that the Board's petition for enforcement of its order should be granted.

The record shows that the Company's circulation department has 14 district men or managers. Each manager is assigned to a geographical area known as a district; there are five country and nine city districts. Though the manager's functions and responsibilities within his district are multifarious and the subject of some disagreement, it is undeniable that his paramount concern is with the newspaper carriers of which there are approximately sixty to seventy in each district.

With respect to the Company's contention that the district men are managerial employees, we are in accord with the Regional Director's analysis that "the discretion and initiative which these men [the district managers] are expected to exercise fall within relatively unimportant areas * * *" and "* * * make them sufficiently removed from managerial policy-making so they may not be considered employees who formulate, determine and effectuate managerial policy."

Though the Board has established a policy of excluding "managerial employees" from bargaining units, it has not developed clear guidelines for determining whether particular individuals are "managerial employees." In Retail Clerks International Ass'n, A.F.L.–C.I.O. v. N. L. R. B., 125 U.S.App.D.C. 63, 366 F.2d 642, 644–645 (1966), *cert. denied*, 386 U.S. 1017, 87 S.Ct. 1373, 18 L.Ed.2d 455, the court notes that there seem to be two fundamental tests for determining whether an employee is a managerial employee and therefore excludable under Board policy from bargaining units.

The first test is to determine whether an employee is so closely related to or aligned with management as to place the employee in a position of potential conflict of interest between his employer on the one hand and his fellow workers on the other. If an employee is found to be in such a position, he is not, under Board policy, entitled to be represented in the collective process.

The second managerial employee test is to determine whether the employee is formulating, determining and effectuating his employer's policies or has discretion, independent of an employer's established policy, in the performance of his duties. If an employer cloaks an individual with such authority or such discretion, that individual would be a managerial employee and would be deprived of the right of representation by a bargaining unit.

The alignment between the 14 district men in question and the upper management echelon of the Company is not of such degree or character as to place these employees in a position of potential conflict. The alignment test is essentially a narrow one in the sense that unless an employee is substantially involved in his employer's labor policies his relationship with management is not one of a managerial employee. The rationale behind this is succinctly set forth in Westinghouse Electric Corporation v. N. L. R. B., 6 Cir., 398 F.2d 669, 670–671 (1968). In that case the court stated:

"The Board strictly adheres to its definition of a 'confidential employee' since a broader rule would, in the Board's opinion, needlessly deprive many employees of their right under Section 7 of the Act to bargain collectively through representatives of their choosing. * * * The Board thus attempts to strike a balance between the right of employees to be represented in the collective bargaining process with the right of the employer to formulate, determine and effectuate its labor policies with the assistance

of employees not represented by the union with which it deals."

In the instant case, the record is devoid of substantial evidence showing that the 14 district men were concerned with or involved in the Company's labor policies to such an extent that a potentially meaningful conflict of interest problem might arise. We find that the district men were not managerial employees under the first test.

■ Nor do we find upon consideration of the record as a whole that the district men were managerial employees within the meaning of the second test as set forth in Retail Clerks International Ass'n, A.F.L.–C.I.O. v. N. L. R. B., *supra*.

The record shows that the district men have similar duties within their respective districts. The paramount responsibilities of these men are: overseeing the distribution of the Company's newspapers; working with the newspaper carriers, including the hiring and the training of the carriers; handling complaints which relate to delivery; adjusting and remitting sales receipts to the Company; participating in Company circulation campaigns, primarily by encouraging carriers to promote new subscriptions; attending sales meetings; recommending discounts for delivery routes; organizing and determining delivery routes within their district; contracting news dealers on behalf of the Company; leasing space to serve as a substation within the district; and making various small purchases.

While the district man has various responsibilities, they are minor in nature and not tantamount to those of an employee who formulates, determines and effectuates his employer's policies. The scope of his authority in the area of significant management policy is limited in nature and as the Regional Director aptly notes "the discretion and initiative which these man are expected to exercise fall within relatively unimportant areas." The record contains evidence indicating that in the few areas where the district man appears to have some discretion in the performance of his job and to have some semblance of policy authority the Company effectively circumscribes such discretion and limits such authority.

The Company maintains that one indicia of the district manager's discretion and authority rests in the fact that these men are "initiating discount policies." The record reveals that the district man may *recommend* instituting a discount on a particular delivery route, but it does not show they have the discretion or authority to make the ultimate determination, independent of Company consideration and approval, of whether a discount policy should be adopted.

A similar indication of the limited range of the district man's discretion and influence on policy can be discerned by reviewing the extent to which he participates in circulation campaigns. While the district man may *suggest* and *participate* in setting up these campaigns, it does *not* appear he may independently initiate a major campaign. His primary function in such a campaign is seemingly confined to executing within his district those campaign plans formulated by his superiors. This amounts to encouraging his carriers "to promote and sell and canvass and get new subscriptions for our newspaper."

A further manifestation of the limited discretion and authority can be discovered in the uncontroverted testimony of the Company's assistant circulation director, Umberto A. Natale. He testified that the district man "can *recommend* that his district be redivided * * *" but that someone else, presumably someone at a higher level, determines whether the recommended subdivision would be provident.

In this case, the extent of the district man's relation to and influence on major company policies is limited to making recommendations to the Company with respect to its policies and future plans. The Board has held that the power to

make recommendations does not warrant precluding one from representation as a managerial employee. Puget Sound Power & Light Company, 117 NLRB 1825, 1827 (1957). The other areas in which the district man has apparent discretion and policy authority are relatively unimportant in scope or effectively circumscribed by Company policy or review.[4]

As an additional proposition, the Company further contends the Board erred in holding that the 14 district men were not supervisors within the meaning of Section 2(11) of the Act, as amended, 29 U.S.C.A. § 152(11), which provides in relevant part:

> "The term 'supervisor' means *any individual* having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline *other employees* * * *." (Emphasis supplied.)

Also relevant is Section 2(3) of the Act, as amended, 29 U.S.C.A. § 152(3), which reads in material part:

> "The term 'employee' shall include any employee, * * *, unless this subchapter explicitly states otherwise, * * *, but shall *not* include any individual * * * having the status of an independent contractor, or any individual employed as a supervisor, * * *." (Emphasis supplied.)[5]

The Company urges that the Board erred in deciding whether the 14 district men were supervisors within the meaning of Section 2(11) by referring to Section 2(3) of the Act to determine whether the individuals they supervised were employees. The Company asserts that relevant legislative history and the wording of Section 2(11) do not "invite reference" to the definition of the term employee in Section 2(3). Thus, the gravamen of the Company's ingenious argument rests on the contention that "any individual who exercised supervisory authority on behalf of an employer, regardless of whether the individuals supervised were 'employees' within the meaning of Section 2(3)", is a supervisor. To bolster its contention, the Company reasons that to hold that the term "employees" in Section 2(11) is to be defined by Section 2(3) would render the word "other" in Section 2(11) superfluous. We are not persuaded by the Company's position on what appears to be a question of first impression.

With regard to the superfluousness argument, we agree with the view expressed in International Ladies' Garment Workers' Union, A.F.L.–C.I.O. v. N. L. R. B., 2 Cir., 339 F.2d 116, 121–122 (1964), that:

> "The natural inference to be drawn from the language of section 2(11), especially if attention is paid to the words '*other* employees', is that the employer referred to is the employer of those being supervised. * * *"

By looking to Section 2(3) for the definition of employee to determine whether an individual is a supervisor does not render the term "other" in Sec-

---

4. Among other points, the Company urges that the district men exercise "independent judgment" in adjusting customer complaints, pledging Company credit, and establishing delivery routes. The record shows that: the adjustments made are minor in amount, routine and under a general Company policy which attempts to hold the carrier responsible for losses he has caused; the pledges of credit are small in amount and routine in nature; and the establishment of delivery routes is subject to policy "suggestions" by the Company.

It is also of interest to note that while a district man has discretionary authority to terminate a news carrier, the circulation manager Merle Williamson could not recall a case of a district man exercising such authority and stated that any termination decision is subject to being overruled "by someone higher up in the Circulation Department."

5. At the hearing before the Regional Director, the parties stipulated that the "carrier boys, news dealers, and motor route dealers * * * were independent contractors working under the jurisdiction of the district managers." See joint appendix, p. 59.

tion 2(11) superfluous, but rather the term functions to limit the statutory definition of a supervisor to those individuals who are given by their employer supervisory authority over other employees of that *same* employer. To so view the function of the term "other" does not appear to thwart the Congressional intent behind Section 2(11) and related sections and is in accord with both judicial and Board precedent. Retail Clerks International Ass'n, A.F.L.– C.I.O. v. N. L. R. B., *supra* at 644, n. 2, of 366 F.2d; Eureka Newspapers, Inc., 154 NLRB 1181, 1185 (1965).

Study of the legislative history behind the 1947 Taft-Hartley enactment of Sections 2(3) and 2(11) sheds scant light on the specific issue of whether the term "other employees" in Section 2(11) is to be defined by reference to Section 2(3). The legislative history does not contain a statement of intent to bar such reference.

We are persuaded by the logic of the Board's reasoning that it is difficult to imagine that Congress, in redefining and narrowing the scope of the term "employee" by excluding supervisors and independent contractors, did not intend for the Board and courts to look to the revised definition of the term "employee", as set forth in Section 2(3), in construing the definition of "supervisor", as defined in Section 2(11).

In view of this reasoning and the absence of precedent and clear legislative history to the contrary, we find that unless an individual is granted by his employer supervisory authority over fellow employees, as defined in Section 2(3), of that same employer, he is not a supervisor within the meaning of Section 2(11).

In the instant case, it would be anomalous to hold that these 14 district men are truly supervisors. The parties have stipulated the carriers and dealers are independent contractors. Since independent contractors are not employees within the meaning of the Act and are excluded from the coverage of the Act by Section 2(3), we affirm the Regional Director's conclusion that "* * * these managers cannot be their supervisors within the meaning of the Act."

Finally, we find no merit in the Company's contention that the district men were supervisors with respect to the Company's agents and solicitors. We find ample support in the record to sustain the Regional Director's conclusion that the supervisory authority of the district men over these employees is "too sporadic and too routine" to warrant classifying them as supervisors. We have held that "[p]erformance of isolated, infrequent duties of a supervisory nature does not transform a rank and file employee into a supervisor." Plastic Workers Union Local 18, I. U., D. & T. W., A.F.L.–C.I.O. v. N. L. R. B., 7 Cir., 369 F.2d 226, 230 (1966).

The petition to set aside the order under review is denied and the cross-petition for enforcement is granted.

Review denied.

Enforcement granted.