Robert ·H. MOURNING, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

McDonnell Douglas Corporation,
Intervenor.

No. 75–2248.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1976.

Decided May 13, 1977.

Gary Green, Washington D.C., with whom Daniel M. Katz, Washington, D.C., was on the brief, for petitioner.

Jesse I. Etelson, Atty., N.L.R.B. of the bar of the Court of Appeals of New York, Washington, D.C., pro hac vice by special leave of court, with whom John S. Irving, Jr., Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John D. Burgoyne, Atty., N.L.R.B., Washington, D.C., were on the brief, for respondent.

Robert A. Evans, Long Beach, Cal., entered an appearance for intervenor.

Before BAZELON, Chief Judge, LEVENTHAL and MacKINNON, Circuit Judges.

Opinion Per Curiam.

Dissenting Opinion by Circuit Judge MacKINNON.

PER CURIAM:

The issue on this appeal is whether petitioner Mourning, during the period preceding his dismissal, was an "employee" protected by the National Labor Relations Act or was a "supervisor" outside the Act's protection.[1]

Petitioner appeals from the NLRB's affirmance of "the rulings, findings and conclusions of the Administrative Law Judge and . . . [the adoption of] his recommended Order." That Order dismissed petitioner's Section 8(a)(1) and (a)(3) complaint, relying on a 1973 trilogy of Board cases (207 N.L.R.B. Nos. 90, 91, 92) which held that "pilots who 'serve some of their time as captains, at which time they are responsible for, and in complete control of, the plane and all persons on board,' are supervisors under [Section 2(11) of] the Act," and therefore not protected by Section 8.[2] In the trilogy cases, the planes carried crews consisting of a captain, pilot, copilot, and two flight engineers. The ALJ found that the present case was distinguishable from the facts of the trilogy only "in degree and not kind since Mourning and his contemporaries did spend significant flight time as pilots in command with at least one subordinate crew member, a copilot, on board."

In his brief to this court and at oral argument, petitioner stated that "all of the transport pilots exercised . . . command authority, vis-a-vis each other, from time to time" and they never "exercised such authority over any other employees." Therefore, petitioner contended, he and his fellow pilots could not be supervisors because there were no "employees" for them "responsibly to direct." Petitioner's Br. at 31 n.19.

■■■ As noted below, this is not a case where the Board has identified the trouble-

1. This case was previously before this Court on a different issue. 505 F.2d 421 (1974).

2. Section 8 of the National Labor Relations Act protects "employees" in certain union-organizing activities. Section 2(3) of the Act defines "employee" as follows:

 The term "employee" shall include any employee . . . but shall not include . .

any individual employed as a supervisor . . . .

Section 2(11) provides:

 The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them . . . .

some problem of statutory interpretation and spoken to it deliberately, thus creating a considered administrative interpretation calling for deference. Examining the question for ourselves without the benefit of the Board's views, we would be inclined to agree with petitioner that a person generally may not be considered a "supervisor" unless he exercises Section 2(11) authority over an "employee" as defined by Section 2(3), which expressly excludes "any individual employed as a supervisor."[3] 29 U.S.C. § 152(3). *See Illinois State Journal-Register, Inc. v. NLRB*, 412 F.2d 37, 44 (7th Cir. 1969) (concluding that the term "employees" in Section 2(11) is to be interpreted by reference to Section 2(3)).

**3.** The dissent argues that Section 2(11) does not depend on Section 2(3) for its definition of "employees." In other words, a supervisor is simply one who directs other workers, who in turn may or may not be Section 2(3) employees. The dissent appears to rely on two arguments to support this statutory construction.

First, because Section 2(11) defines "supervisor" as one having authority to direct "other employees," Congress must have meant the term "employees" in its broad, everyday sense rather than its more limited Section 2(3) sense. Otherwise, Congress would not have used the word "other." We think this superfluity argument is satisfactorily answered by *Illinois State Journal-Register, Inc. v. N.L.R.B.*, 412 F.2d 37, 43–44 (7th Cir. 1969), which relied on the Board's own reasoning to conclude:

> By looking to Section 2(3) for the definition of employee to determine whether an individual is a supervisor does not render the term 'other' in Section 2(11) superfluous, but rather the term functions to limit the statutory definition of a supervisor to those individuals who are given by their employer supervisory authority over other employees of that *same* employer.

In other words, "other employees" refers to *other workers of that same employer* as opposed to different employers; it does not mean *other workers than the supervisor himself.*

Second, the dissent poses the hypothetical of a company with multiple layers of management and supervisors to show that a person might be a supervisor without having Section 2(3) employees directly under him. What the dissent overlooks, however, is that for this person and those he directs to be classified as Section 2(11) supervisors, they all must act as links in a chain of command between management and Section 2(3) employees. In other words, although a particular supervisor may have no

Proceeding from this statutory construction, we question the factual predicate for the NLRB's order. The record does not clearly indicate whether the ALJ and the Board rested their decisions on petitioner's command authority over a several-person crew or simply over an occasional copilot who was of the same rank as petitioner and would have supervisory status if petitioner did. The ALJ's finding states, ambiguously, that petitioner sometimes commanded *"at least one* subordinate crew member, a copilot," JA 9 (emphasis added), suggesting that he occasionally directed a larger crew. However, the record seems to indicate that although petitioner sometimes carried company employees as passengers, JA 54–58,

Section 2(3) employees directly under him, it would seem that he cannot be considered a Section 2(11) supervisor unless the persons he directs have authority over Section 2(3) employees. This rule would seem to be compelled by the policies behind Sections 2(3) and 2(11). Congress excluded supervisors from the protections of the Act to assure that these agents of management would not be pressured by divided loyalties and because employees need protection from management's agents as much as from management itself. *See Retail Clerks Int'l Ass'n v. N.L.R.B.*, 125 U.S.App.D.C. 63, 366 F.2d 642, 644–45, *cert. denied*, 386 U.S. 1017, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1966). But to be agents of management, they must exercise authority—either directly or via a chain of command consisting of inferior supervisory employees—over other employees who *are* potentially protected by the Act. Hence, while the dissent's hypothetical is plausible, it would not seem to control the present case unless Mourning or those he sometimes directed can be shown to have exercised Section 2(11) authority over other employees as defined in Section 2(3).

This fundamental policy also explains why Section 2(11) supervisory status would not seem able to rest solely on an arrangement in which the person concerned alternates with others of like status between supervisor and supervisee, with no purely Section 2(3) employees farther down the line of command. Under such circumstances, where the same workers alternate as supervisors and supervisees, there is no continuing conflict of interest arising from their ties with both management and Section 2(3) employees to justify their exclusion from the protection of the NLRA.

his actual crew never exceeded one copilot, JA 22–23.[4]

The ALJ's failure to clarify this crucial point suggests that he may have been unaware of its legal significance. Indeed, the Board argues that petitioner is foreclosed from raising this issue on appeal because he did not advance it before the Board and "the Board has not had an opportunity to address this contention, either in the proceeding below or on this appeal." Letter from NLRB, dated December 14, 1976.

 Inasmuch as the General Counsel's brief raised this argument below,[5] we do not believe that petitioner is precluded from pressing the issue. However, in view of the position of Board counsel that the Board has not had the opportunity to address this contention, and in view of the ambiguity in the ALJ's findings, we remand the record for the benefit of the Board's consideration of the legal question raised by petitioner, and for clarification of the factual questions (1) whether petitioner's crew ever consisted of persons who were "employees" within Section 2(3) or were merely other pilots like himself, and (2) if so, whether the authority he exercised over these employees was not "too sporadic and routine" to warrant classifying him as a supervisor. *See Illinois*

State Journal-Register, Inc. v. N.L.R.B., 412 F.2d 37, 44 (7th Cir. 1969); N.L.R.B. v. Sayers Printing Co., 453 F.2d 810, 815 (8th Cir. 1971); N.L.R.B. v. Security Guard Service, 384 F.2d 143, 149–51 (5th Cir. 1967).

MacKINNON, Circuit Judge, dissenting:

This case involves an important uncertainty in the National Labor Relations Act, 29 U.S.C. §§ 141 *et seq.*, which is now addressed in footnote 3 of the majority opinion. Section 2(3) of the Act provides:

> The term "employee shall *include* any employee . . . but shall not include . . . any individual employed as a supervisor . . .

29 U.S.C. § 152(3) (1970) (emphasis added).

Section 2(11) of the Act provides:

> The term "supervisor" *means* any individual having authority, in the interest of the employer, to hire, transfer, . . . or discipline *other employees*, or responsibly to direct *them* . . .

29 U.S.C. § 152(11) (1970) (emphasis added).

Section 2(3) defines "employee" loosely, *i.e.,* to *"include"* etc., while section 2(11) is a more rigid definition as it states what the word "supervisor" "means." Thus, in the case of a conflict section 2(11) would give

---

4. A pilot's supervisory status logically must rest on his power to direct crew members, not merely passengers. In one of the trilogy cases, the Board stated:

> In a number of cases, the Board has found that ships' captains and pilots responsibly direct ships' crews and on this ground alone has found the captains and pilots to be supervisors. We find, therefore, that the pilots [here, whose planes carried a crew consisting of a captain, pilot, copilot, and two flight engineers] . . . are supervisors within the meaning of the Act.

Lockheed-California Co., 207 N.L.R.B. No. 92, p. 6 (1973). Although a pilot may have temporary authority to command non-crew passengers for reasons of safety, the command powers that might make a pilot a supervisor within Section 2(11) pertain to continuing management-employee work relationships and normally would not be exercised over occasional passengers. *See NLRB v. Security Guard Service, Inc.,* 384 F.2d 143, 146–47, 151 (5th Cir. 1967); *International Union of United Brewery, etc. v. NLRB,* 111 U.S.App.D.C. 383, 298 F.2d 297, 303 (1961), *cert. denied sub nom. Gulf Bottlers, Inc.*

v. *NLRB,* 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847.

5. In urging the Board to overturn the findings of the ALJ, the General Counsel pointed out that in the trilogy cases, the pilots directed a crew normally consisting of "a captain, pilot, co-pilot and two flight engineers." While conceding that those pilots' authority to direct those crews brought them within Section 2(11), the General Counsel argued that the record failed to show that petitioner ever "responsibly directed other employees" because his copilot was also a pilot like himself. Therefore, said the General Counsel, "[i]t would seem difficult to find Mourning to be a supervisor since the evidence clearly indicates that there was in fact no one for him to *direct* or *supervise.*" We think this objection by the General Counsel satisfies the requirements of Section 10(e), which states: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e).

way the least. Supervisors direct "*other* employees." It follows that supervisors are themselves employees, at least in some contexts, *i.e., for the purposes of section 2(11)*. Otherwise, the statute could merely have read "supervisors direct employees," not "supervisors direct *other* employees."

The only case to discuss this question is *Illinois State Journal-Register, Inc. v. N.L. R.B.*, 412 F.2d 37 (7th Cir. 1969). The issue there was whether independent contractors were "employees" within the meaning of the statutory phrase "supervisors direct other employees." The court held that they were not stating:

> [T]he term ["other"] functions to limit the statutory definition of a supervisor to those individuals who are given by their employer supervisory authority over other employees of that *same* employer.

412 F.2d at 44 (emphasis in the original).

The majority opinion is thus in error in citing *Illinois State Journal-Register*, as it does, for the proposition that

> a person generally may not be considered a "supervisor" unless he exercises Section 2(11) authority over an "employee" as defined by Section 2(3), which expressly excludes "any individual employed as a supervisor."

Maj.op. at —— of 182 U.S.App.D.C., at 770 of 559 F.2d. All *Illinois State Journal-Register* holds is that the supervis*ees* cannot be independent contractors but must be employees of the *same* employer.

At the same time, the *strict* language of the definitions of "employee" and "supervisor" gives some support for a tentative construction that an "individual employed as a supervisor" cannot be an employee under section 2(3); that supervisors must direct other employees; and hence, supervisors cannot be those who direct "individuals employed as supervisors." There are two ways to apply the definitions in question.

The first is taken by the majority opinion. It ignores the phrase "supervisors direct *other* employees" and focuses on the language in section 2(3). It concludes that Mourning is an employee if the only persons he supervises are other supervisors. That leads to anomalous results. Consider an officer of a corporation who only deals with other officers and supervisors. If one were to follow the rationale of the majority, such corporate officers would be employees, and a union of executive officers who only supervise officers and supervisors could seek recognition under the labor laws. Since these others are of his own rank in the company, or are themselves involved in giving further orders to implement his directives, he only supervises other supervisors, and hence is an employee.

The majority opinion in footnote 3 responds by terming "supervisors" those who "exercise authority—either directly or via a chain of command consisting of inferior supervisory employees—over other employees who *are* potentially protected by the Act." Squaring that definition with the statute is a difficult task; supervisors must have authority "responsibly to direct them [other employees], or to adjust their grievances, or effectively to recommend such action," according to the statute. Gone in the majority formulation is the requirement of responsible direction of other employees; in its place is an amorphous exercise of decision-making via layers of staff with eventual impact on employees. Further, the majority formulation requires that the chain of supervision include eventually section 2(3) employees. This is a circular definition since by section 2(11) a supervisor cannot be a section 2(3) employee.[1]

The labor act requires supervisors to direct employees *responsibly*, not simply to make choices that eventually affect them.

---

1. The majority reasons one is not a § 2(3) employee if one is a supervisor and a supervisor is one who supervises other § 2(3) employees. Hence the majority asserts, in effect, one is not a § 2(3) employee if he supervises § 2(3) employees. The vice of this reasoning is that it does not provide a standard for determining who *are* § 2(3) employees. This circularity results from the majority's focusing exclusively on the definition in § 2(3). Such result is avoided if one focuses instead on the function of supervision, as expressed in § 2(11), rather than on the subject of the supervision.

All members of this panel are agreed that high level managers are "supervisors" under the Act. This must be because such people give orders to others who are, for section 2(11) purposes, "other employees"; not because the high level manager's order to "increase output" eventually works its way into some assembly line moving faster.

The second view is to stress the language used in section 2(3): "individual employed as a supervisor," rather than the single word "supervisor." When an individual receives direction (whether it be as a junior officer in the hypothetical or as a co-pilot in the *Mourning* setting), he is not at that moment "employed" "as a supervisor." But that does not convert him into an "employee" to the extent that he has "employee" rights under the Act, because the test for "employee" status under section 2(3) considers, among other factors, whether supervisory authority is exercised to any significant extent. The test for "employee" in the context of determining who are being "supervised" by "supervisors" is different— such determination turns on the "authority" conferred on the individual by the employer and whether that authority is being exercised to a significant extent in the interest of the employer.

Interpreting "employee" in this manner is completely consistent with 2(11)'s use of the phrase *"other* employees." Section 2(11) recognizes that supervisors are themselves supervised and in turn supervise employees of the company. Corporate officers operate similarly, receiving and giving directions.

Only the second construction avoids the dilemma of the union of corporate officers. It might be argued that all corporate officers give directions to some non-supervisors—secretaries for instance. Such a response is ineffective. Many corporate officers at the highest level function through junior officers (who are in turn supervisors) to such an extent that any authority over non-supervisors is a trivial part of their job, for purposes of ordinary section 2(11) law.

Accordingly, it is my opinion that Mourning is a supervisor by reason of his FAA-recognized *authority* responsibility to direct co-pilots whoever they may be. This would result in affirming the Board rather than remanding the case for further proceedings after eight years, and would pre-empt the need to consider the other incidents of Mourning's supervisory status (such as conducting instructional flights, where the employee pupils never were supervisors).

We are basically faced with a choice of how to characterize a situation where a group of individuals work a great deal in directive relationships to each other, with the role of the director sometimes trading off.[2] The essential element of such an arrangement seems to be that very element that the National Labor Relations Act wished to exclude from employee collective bargaining units: authority in the interest of the employer responsibly to direct others who serve the same company. In my view we should affirm the Board.

---

**2.** The majority opinion, in footnote 3, justifies its view that none of its pilots were supervisors by explaining that "where the same workers alternate as supervisors and supervisees, there is no continuing conflict of interest arising from their ties with both management and § 2(3) employees to justify their exclusion from the protection of the NLRA." The need for a "continuing" conflict has never been recognized as necessary for supervisory status—that a conflict might potentially arise, even for a brief emergency, has long been recognized as providing ample authority for one employee to be deemed another's supervisor. *See, e.g., Ohio Power Co. v. NLRB*, 176 F.2d 385, 388 (6th Cir.), *cert. denied*, 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553 (1949); *cf. Federal Compress & Warehouse Co. v. NLRB*, 398 F.2d 631, 634 (6th Cir. 1968). If pilot and copilot were both union members, *a single conflict of interest* between their union loyalties and the interests of management relative to the flight could well be disastrous.