MACCABEES MUTUAL LIFE
INSURANCE COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

United Food and Commercial Workers
International Union,
AFL–CIO–CLC, Intervenors.

Nos. 84–5184, 5346.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 13, 1985.

Decided March 19, 1985.

Fred W. Batten, argued, Dwight H. Vincent, Emily J. Lewis, Detroit, Mich., for petitioner.

Linda Weisel, argued, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent.

Isaac N. Groner, argued, Washington, D.C., for intervenors.

Before JONES and KRUPANSKY, Circuit Judges, and BROWN, Senior Circuit Judge.

PER CURIAM.

This case presents the issue of whether there is warrant in the record and a reasonable basis in law for the Regional Director's determination that the employees in question were not serving in a managerial capacity and, thus, were part of the bargaining unit. Finding that there was, we affirm.

The United Food and Commercial Workers International Union, AFL–CIO–CLC (Union) has been the exclusive bargaining representative for the employees at the home office of Maccabees Mutual Life Insurance Co. (Employer) since 1950. In January, 1982, the Employer made some

changes in the individual claims department, and in the group benefits department. The Employer's individual claims department passes on health and life insurance claims filed pursuant to policies that have been sold to individuals. Prior to January 1982, the department consisted of a senior health claims examiner, a senior life claims examiner, and a life claims examiner. On January 4, 1982, the three examiner positions were eliminated and replaced by three claims representative positions. The three claims representative positions were immediately filled by the employees who had previously occupied the examiner positions. The group benefits department is responsible for the disposition of claims filed pursuant to the issuance of group insurance policies. This department's examiner unit originally consisted of senior claims examiner, claims examiner, and claims representative positions. On January 4, 1982, the examiner and representative positions were eliminated and replaced by three claims analyst positions. More recently, an additional claims analyst position was filled, making a total of seven individuals in disputed positions.

Prior to January 4, 1982, the examiners were to determine whether or not claims should be paid by initiating and directing an investigation. Investigative information was obtained through telephone contacts made by the examiner assigned to the claim or through field investigations carried out by others, but who were under the examiner's direction and control. The examiner could authorize up to a $1000 expenditure per investigation, subject, however, to the department director's review. If the examiner determined that the claim was valid, the examiner would calculate the benefit and process the claim for payment in accordance with the appropriate policy provisions. If the examiner determined that the claim had no merit, the examiner would process the denial of benefits. However, the authority of each examiner to either approve or deny a payment on a claim was subject to certain limitations. The examiners were also responsible for answering all claims inquiries. Additional-

ly, the individual claims department examiners had to prepare quarterly reports on outstanding claims and performed some clerical functions.

According to the Employer the crucial differences between the examiner and the claims representative positions in the individual claims department, are that as representatives, these individuals now: (1) are no longer required to perform clerical duties; (2) are no longer subject to any mandatory limitations with respect to denial or approval claims; (3) are now permitted, during the investigation of a claim, to authorize the expenditure of up to $1000, without such expenditure being subject to supervisory review; and (4) are now required to attend managerial meetings. With respect to the group benefits department, the Employer asserts that the crucial difference between the claims analyst positions and the positions they replaced is that the analysts are no longer subject to any limitations on denial or payment of claims and the analysts seek approval of their decisions at their own discretion.

The employer regarded these new positions as managerial and, thus, not subject to collective bargaining as provided in the collective bargaining agreement. On May 25, 1982, the Employer filed a unit clarification petition seeking to have the collective bargaining unit clarified by excluding these employees. On January 7, 1983, the Regional Director found that the collective bargaining unit included these employees and dismissed the petition. The Board denied the Employer's request for review on February 28, 1983.

Subsequently, the Employer refused to bargain with the Union over these employees. The Union then filed an unfair labor practice charge on July 1, 1983. The Regional Director issued a complaint on July 20, 1983. The Board issued an order requiring the Employer to bargain with the Union over these employees on March 5, 1984. The Employer then filed the instant petition for review and the Board filed a cross-application for enforcement of its order. The Union intervened.

The Board has broad authority, delegated to it by Congress, to determine the unit appropriate for collective bargaining. 29 U.S.C. § 159(b); *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). The Board's decision to clarify a unit to include disputed individuals on the ground that they are "employees" covered by the Act is "to be accepted if it has 'warrant in the record' and a reasonable basis in law." *NLRB v. Hearst Publications*, 322 U.S. 111, 131, 64 S.Ct. 851, 861, 88 L.Ed. 1170 (1944); *NLRB v. Retail Store Employees Union, Local 876*, 570 F.2d 586, 592 (6th Cir.1978).

The policy behind excluding managerial employees from bargaining units is that the inherent nature of their duties closely aligns them with management interests. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 286–88, 94 S.Ct. 1757, 1767–68, 40 L.Ed.2d 134 (1974). The Supreme Court has observed that "[t]hese employees are 'much higher in the managerial structure' than those explicitly mentioned by Congress, which 'regarded [them] as so clearly outside the Act that no specific exclusionary provision was thought necessary.'" *NLRB v. Yeshiva University*, 444 U.S. 672, 682, 100 S.Ct. 856, 862, 63 L.Ed.2d 115 (1980) (brackets in original) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. at 283, 94 S.Ct. at 1766)).

Managerial employees are those who "'formulate and effectuate management policies by expressing and making operative the decisions of their employer.'" *Bell Aerospace*, 416 U.S. at 288, 94 S.Ct. at 1768 (quoting *Palace Laundry Dry Cleaning Corp.*, 75 N.L.R.B. 320, 323 n. 4 (1947)). The Supreme Court expounded upon this definition in *Yeshiva:*

> Managerial employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management.... Although the Board has established no firm criteria for determining when an employee is so aligned, normally an employee may be excluded as managerial only if he repre-

sents management interests by taking or recommending discretionary actions that effectively control or implement employer policy.

*Yeshiva*, 444 U.S. at 683, 100 S.Ct. at 862 (citation and footnote omitted). The Sixth Circuit has stated: "The determination of an employee's managerial status 'depends upon the extent of his discretion, although even the authority to exercise considerable discretion does not render an employee managerial where his decision must conform to the employer's established policy.'" *NLRB v. Retail Store Employees Union, Local 876*, 570 F.2d 586, 592 (6th Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 109 (1978). Similarly, if the discretion falls within "relatively unimportant areas," employees are not managerial. *Illinois State Journal Register, Inc. v. NLRB*, 412 F.2d 37, 42 (7th Cir.1969).

The Employer argues that the Regional Director's finding was based on two errors. First, the Employer contends that the regional Director failed to focus on the type of facts required in a *Yeshiva* analysis in that he did not consider the degree of discretion which the new claims representatives have within established policy, their role in the managerial meetings, their alignment with management by reason of remuneration and general working conditions, or the elimination of prior job responsibilities. This argument lacks merit. The Regional Director did consider the degree of discretion possessed by the new claims representatives. He concluded, however, that the discretion was "somewhat illusory." Further, there is substantial evidence to support the Director's conclusion that the discretion given to the employees in these "new" positions was limited.

Second, the Employer contends that the Regional Director erred in blindly applying old Board insurance cases without properly examining the factual or legal rationale for those decisions. This argument is also without merit. The Employer argues that the cases are factually obsolete given the changes that have occurred in the insurance industry. However, the fact that the

Regional Director noted that the tasks of the Employer's representatives and analysts are not essentially unlike the tasks performed by the claims adjusters referred to in early insurance industry cases does not establish any failure to consider the realities of the 1980s but simply reflects the Regional Director's rejection of the Employer's claims concerning what, on this record, those realities are.

In sum, the Regional Director's decision that the employees are covered by the Act has warrant in the record and a reasonable basis in law. The Employer failed to introduce evidence sufficient to justify its claim that these persons are now part of management and no longer entitled to the protection of the Act. Consequently, the order of the National Labor Relations Board is EN-FORCED without modification.