NATIONAL LABOR RELATIONS
BOARD, Petitioner,

and

International Union of United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W., Intervening Petitioner,

v.

CASE CORPORATION, Respondent.

No. 92–2945.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1993.

Decided June 4, 1993.

Larry G. Hall (argued), Chicago, IL (Mark A. Spognardi, and Matkov, Salzman, Madoff & Gunn, on the brief), for respondent Case Corp..

Stanley Eisenstein (argued), Chicago, IL, for intervening-petitioner UAW.

Charles Donnelly (argued), Supervisory Atty., NLRB, Washington, DC (Karen L. Arndt, Atty., Jerry M. Hunter, Gen. Counsel, Yvonne T. Dixon, Acting Dep. Gen. Counsel, Nicholas E. Karatinos, Acting Assoc. Gen. Counsel, Aileen A. Armstrong, Dep. Assoc. Gen. Counsel, on the brief), for petitioner NLRB.

Before POSNER and RIPPLE, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

TIMBERS, Senior Circuit Judge:

Petitioner National Labor Relations Board (Board) applies for enforcement of its order finding that the refusal of respondent Case Corporation (Case) to bargain collectively and in good faith with the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (Union), the certified collective bargaining representative of Case's engineers, violated Sections 8(a)(5) and (a)(1) of the National Labor Relations Act (NLRA). 29 U.S.C. §§ 158(a)(5) and (a)(1) (1988).

Case opposes enforcement of the Board's order, claiming that the Board's factual and legal findings were not supported by substantial evidence. For the reasons that follow, we enforce the Board's order.

---

\* The Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Case is engaged in the business of designing and manufacturing agricultural equipment. At its facility in East Moline, Illinois, it employs engineers classified in six categories. Among these are twelve industrial engineers (IEs), seven facility engineers (FEs), and one long-range planning engineer (LRPE). All of the engineers are salaried employees with salaried benefit packages and are under the supervision of managers. Each category of engineers shares a large room. Each engineer has his own desk.

The IEs make recommendations to upper level management regarding the most efficient and inexpensive methods of operating the facility. In so doing, the IEs establish methods of production at the facility. The IEs, however, cannot change manpower levels or implement changes on the production line without the approval of management. IEs also establish and administer incentive production standards for Case's hourly employees by entering information into a computer program entitled MOST. When these standards are challenged, the IEs are responsible for defending them in the incentive standards complaint and grievance procedure. The IEs also are involved in collective bargaining negotiations, advising Case's management on technical matters pertaining to union proposals.

The FEs are responsible for analyzing, designing, procuring, and installing projects relating to Case's facilities, grounds, and buildings. They also ensure that the facility complies with applicable environmental and safety requirements. The FEs primarily design cost-efficient layouts of the major systems within the facility. Once they have produced a layout, they recommend whether it should be implemented by Case employees or by outside contractors. These recommendations, however, along with any recommendations involving expenditure of money, must be approved by management. If management approves the layout and the proposed implementation, the FEs supervise implementation of the project.

The LRPE is responsible for developing and implementing the East Moline action plan, a scheme designed by management to convert the facility into a world class manufacturing plant within five years. The LRPE drafts prints for long-range projects based on information in Case's files. Management then decides which projects, if any, to implement. Indeed, all of the LRPE's proposals must be approved by management before implementation. The LRPE neither decides which projects will be produced in the future nor which individuals will be chosen to do a job or have their jobs changed or eliminated.

On March 16, 1990, the Union filed a petition with Region 33 of the Board seeking certification to represent all industrial, facility, long-range planning, process, metallurgical, and advanced planning engineers employed at Case's East Moline facility. Case opposed the petition, contending that these engineers were not entitled to representation because they are managerial, supervisory or confidential employees. To resolve this dispute, a hearing was held by the Board's Acting Regional Director (ARD).

On May 25, 1990, the ARD filed a decision and direction of election, finding that the engineers were appropriate units for collective bargaining and scheduling an election for June 22, 1990. On June 8, 1990, Case filed a request with the Board to review the ARD's decision. On June 21, 1990, the Board granted Case's request but refused to stay the election. Accordingly, on June 22 an election was held at the East Moline facility. Of the 42 employees who voted, 28 cast votes for the Union. On August 27, 1991, the Board issued an order affirming the ARD's determination that the engineers were neither managerial nor confidential employees and directing the ARD to issue the appropriate certification. On September 16, 1991, the Union was certified as the exclusive collective bargaining representative for Case's engineers.

Case disagreed with the Board's order and refused to bargain with the Union. As a result, the Union filed an unfair labor practice charge with the Board. On December 18, 1991, the Board's General Counsel issued a complaint alleging that Case's refusal to

bargain collectively and in good faith with the Union violated 29 U.S.C. §§ 158(a)(5) and (a)(1). In its answer, Case admitted its refusal to bargain, but disputed the validity of the Union's certification. After the Board's General Counsel filed a motion for summary judgment, on January 24, 1992 the Board transferred the proceeding to itself and issued an order to show cause why the motion should not be granted. On February 26, 1992, a three-member panel of the Board entered an order granting the General Counsel's motion for summary judgment and ordering Case to cease and desist from its refusal to bargain with the Union.

On August 18, 1992, the Board filed a petition with this Court seeking to enforce its order. On September 16, 1992, the Union filed a motion to intervene pursuant to Fed. R.App.P. 15(d). On September 21, 1992, we granted the Union's motion.

Case opposes enforcement of the Board's order, contending that the Board's finding that the IEs, FEs, and LRPE are not managerial or confidential employees is not supported by substantial evidence.

## II.

■ We may reverse the Board's decision and order only if its factual findings are not supported by substantial evidence and its legal conclusions lack a reasonable basis in the law. *NLRB v. George Koch Sons, Inc.*, 950 F.2d 1324, 1330 (7th Cir.1991). We cannot "simply rubber stamp [the Board's] decisions", *NLRB v. Indianapolis Mack Sales & Serv., Inc.*, 802 F.2d 280, 283 (7th Cir.1986), but we must conduct a thorough review of the record to ensure that the unit determination is not unreasonable, arbitrary or capricious. *NLRB v. Joe B. Foods, Inc.*, 953 F.2d 287, 293 (7th Cir.1992). In reviewing the Board's decision, we are mindful that the determination of an appropriate bargaining unit involves "a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed". *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491 (1947).

### (A) *Managerial Employees*

Case contends that the Board's conclusion that the engineers were not managerial employees is not supported by substantial evidence. It is well established that managerial employees are excluded from coverage under the NLRA. *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 275 (1974). We have recognized two tests for determining whether a position is managerial. The first test is whether the employee is so closely related to or aligned with management as to place the employee in a position of potential conflict of interest between his employer and his fellow employees. *Illinois State Journal–Register, Inc. v. NLRB*, 412 F.2d 37, 41 (7th Cir.1969). This test is "a narrow one". *Id.* Unless an employee is substantially involved in his employer's labor policies, he will not be considered managerial. *Id.* The second test analyzes whether the employee formulates and effectuates his employer's policies or has discretion independent of these policies in the performance of his duties. *Id.*

### (1) *The Industrial Engineers*

■ Case contends that the Board erred in concluding that the IEs were not managerial employees. Applying the first test, the IEs are not substantially involved in Case's labor policies so as to present a conflict of interest. While they do participate in the incentive standards complaint and grievance procedure, their main responsibility is to explain how they calculated the standard and not to implement changes in it. *Chapman Valve Mfg. Co.*, 119 N.L.R.B. 935, 937 (1957) (limited participation of engineers in grievance procedure insufficient to constitute managerial or confidential status). As for their participation in collective bargaining negotiations, the IEs are relied upon only to advise Case's management regarding the efficiency and cost effectiveness of changes resulting from union proposals. Since their role is limited to giving advice rather than making decisions, it is not so closely aligned with management as to create a conflict of interest. While this may be said to be a close call, we are not convinced that the Board acted arbitrarily or unreasonably in

concluding that the IEs' participation in collective bargaining negotiations did not rise to the level of substantial involvement in Case's labor policies.

The Board also properly concluded that the IEs did not satisfy the second test for managerial status. There is no evidence that IEs make other than technical recommendations regarding the methods of production utilized at the East Moline facility. *Chrysler Corp.*, 192 N.L.R.B. 1208, 1209 (1971) (IEs, since they "suggest methods changes to increase efficiency and reduce costs", held not to be managerial employees). Indeed, the IEs do not make individual employee assignments or establish rates of pay. *Id.* The IEs also lack independent authority to change manpower requirements or implement changes on the production line. Their main function consists of observing, recording, and entering data into a computer which generates incentive standards according to a program designed by management to incorporate Case's production policies. While the IEs undoubtedly do have some discretion through the exercise of their independent technical judgment, since they act to fulfill pre-established policies, this authority falls short of that of managerial employees. *NLRB v. Wilson–Crissman Cadillac, Inc.*, 659 F.2d 728, 730 (6th Cir.1981) (exercise of discretion does not render employee managerial where decisions must conform to employer's established policy); *Westinghouse Elec. Corp. v. NLRB*, 424 F.2d 1151, 1158 (7th Cir.), *cert. denied,* 400 U.S. 831 (1970) (despite engineers' exercise of independent technical judgment, where they do not set company policy they are not managerial). Indeed, the IEs do not act on their own initiative but are assigned work by supervisors who seek to achieve Case's policy objectives. Since there is no evidence that the IEs formulate Case's policies or exercise discretion other than that inherent in their limited role as technical advisors, we hold that the Board properly included them within the certified collective bargaining unit.

### (2) *The Facility Engineers*

■ Case asserts that the Board erred in concluding that the facility engineers were not managerial employees. This claim fails because, in their role as designers of space and machine layouts, the FEs do no more than make technical recommendations that must meet with management's approval before being implemented. Indeed, all of the FEs' recommendations must first be reviewed and approved by management. *Flintkote Co.*, 217 N.L.R.B. 497, 499 (1975) (engineers whose recommendations must be approved by management are not managerial employees). The FEs do not assign work to particular employees or determine which employees are affected by labor saving devices. Like IEs, FEs merely make technical decisions which comply with Case's stated policy objectives. They lack discretion to deviate from these policies. Further, since they can only recommend and not select contractors, FEs are not faced with any conflict of interest between Case's management and their fellow employees. Under either test, we hold that the Board properly concluded that the FEs were appropriate members of the collective bargaining unit.

### (3) *The Long–Range Planning Engineer*

■ Case contends that the Board erred in concluding that the LRPE is not a managerial position. This claim also is without merit. Like the IEs and the FEs, the LRPE is relied upon only for his technical expertise. He acts in accordance with the East Moline action plan, a policy statement adopted by management. He does not decide which employees will be selected for jobs or will have their jobs eliminated or changed. He also has no say regarding which products Case will produce in the future. Indeed, the LRPE is at most a source of technical expertise who provides management with advice enabling it to implement its policies. Without a role in formulating corporate policy, the LRPE has no authority over acceptance or implementation of his recommendations by Case's management. Further, the mere fact that the LRPE aims to achieve lower labor costs does not create a conflict of interest. Every job in Case's facility is aimed at increasing productivity and decreasing costs. To adopt Case's argument is effectively to classify *all* jobs as managerial and thus ineligible for union representation. Such a result would eviscerate needlessly the NLRA. We

hold that the Board properly concluded that the LRPE was entitled to representation in the collective bargaining process.

(B) *Confidential Employees*

▆ Case also contends that the industrial and facility engineers are confidential employees within the meaning of applicable Board decisions. Although confidential employees are not specifically excluded from coverage under the NLRA, the Board has a long-standing policy of excluding employees who "assist and act·in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations". *B.F. Goodrich Co.*, 115 N.L.R.B. 722, 724 (1956). Confidential employees are those with regular access to "confidential information concerning anticipated changes which may result from collective-bargaining negotiations". *Pullman Standard Div. of Pullman, Inc.*, 214 N.L.R.B. 762, 762–63 (1974).

In addressing this claim, we observe that Case and the Board make essentially the same arguments referred to in Part (A), *supra*. As for the IEs, Case stresses the fact that some IEs sit at the bargaining table with Case during negotiations with the Union, and thus are privy to confidential information regarding labor relations with the Union. As stated above, the IEs' role in these negotiations is limited to providing technical advice on engineering issues. They do not have access to wage or other confidential information. In fact, the record shows that the data generated· and maintained is accessible to representatives of the Union as well as management. Accordingly, we are not convinced that the IEs' role in the collective bargaining process is so substantial as to place them in a position of having regular access to Case's labor relations policy before it becomes known to the Union or employees concerned. *Associated Day Care Serv. of Metro. Boston*, 269 N.L.R.B. 178, 181 (1984).

As for the FEs, they are not involved in the grievance process and do not participate in Case's collective ·bargaining negotiations. While they have access to some confidential information, there is no evidence that it is relevant to labor relations with the Union.

*Timkin Detroit Axle Co.*, 80 N.L.R.B. 1075, 1077 (1948) (engineers not confidential employees ·where they "neither handle labor relations negotiations nor deal with confidential data pertinent to labor relations"); *see also Pullman, supra*, 214 N.L.R.B. at 763 (stating that "the precise nature of the allegedly confidential information is significant."). Since the FEs are not privy to the type of information which, if disclosed to the Union, would prejudice Case's bargaining strategy in negotiations with the Union, and since they are not involved in collective bargaining negotiations, we hold that the Board properly concluded that they were not confidential employees.

(C) *Whether the Board's Order Should Be Enforced in its Entirety*

Finally, Case asserts that since the Board erred in excluding the ·IEs, FEs and LRPE from the collective bargaining unit, we must deny enforcement of the Board's order in its entirety. In view of our holding that the Board properly included the engineers in the collective bargaining unit, we enforce the Board's order in its entirety.

### III.

To summarize:

We hold that there was substantial evidence to support the Board's findings that the IEs, FEs and LRPE were neither managerial nor confidential employees and therefore were included properly in the collective bargaining unit. We enforce the Board's order.