**EMPRESS CASINO JOLIET COR-PORATION, Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner,**

and

**American Maritime Officers, Intervenor–Respondent.**

Nos. 99–1990, 99–2440.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1999

Decided Feb. 24, 2000

Scott V. Kamins (argued), Krupin, Greenbaum & O'Brien, Washington, DC, for Empress Casino Joliet Corp.

Fred I. Feinstein, N.L.R.B., Contempt Litigation Branch, Washington, DC, Rachel Gartner (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, Debra L. Stefanik, N.L.R.B., Region 33, Peoria, IL, for N.L.R.B in No. 99-1990.

Joel Glanstein (argued), O'Donnell, Shwartz, Glanstein & Rosen, New York, NY, for American Maritime Officers.

Rachel Gartner (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, Glenn A. Zipp, N.L.R.B., Region 33, Peoria, IL, Aileen Armstrong, N.L.R.B., Office of the General Counsel, Washington, DC, for N.L.R.B. in No. 99-2440.

Before POSNER, Chief Judge, and ROVNER and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

 We are asked to review a decision by the Labor Board which holds rather surprisingly that none of the captains, first mates, or chief engineers of riverboat gambling casinos is a supervisor within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(11); *NLRB v. Health Care & Retirement Corp. of America,* 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994), and all therefore are entitled to bargain collectively with their employer, the Empress Casino Joliet Corporation. The decision was rendered by a regional director of the Board and affirmed by the Board without any discussion of the issues. 327 N.L.R.B. No. 203 (March 31, 1999).

The two riverboats in question are large, expensive ships, valued at $60 and $80 million respectively. The smaller one carries 1000 passengers and the larger 1300. Each boat sails eight times a day for an hour at a time, cruising the Des Plaines River for a mile out and back from Joliet, Illinois. The crew consists of a captain, first mate, chief engineer, and 7 to 10 deckhands (including an oiler). A number of other employees also work on the boats (cooks, bartenders, waiters, croupiers, security personnel, and so forth), with the result that there is a total of about 150 to 200 employees of Empress on each boat when it is sailing. Yet according to the Labor Board the only supervisor of the employees on the boats (including the officers) is the head of Empress's Marine Operations department, a shore-based gentleman named Gehrke. Although the boats are manned 24 hours a day, seven days a week, and do not sail only during business hours, Gehrke works a normal business day, though he does carry a beeper when he's not in his office.

 In this age of instantaneous communication, not all supervisors need be present every minute in the workplace that they are supervising. *Children's Habilitation Center, Inc. v. NLRB,* 887 F.2d 130, 133 (7th Cir.1989); *VIP Health Services, Inc. v. NLRB,* 164 F.3d 644, 649–50

(D.C.Cir.1999); *Beverly Enterprises v. NLRB*, 148 F.3d 1042, 1048 (8th Cir.1998). Yet the Board's ruling has the curious implication that a ship with more than 1000 people aboard it (the larger of the two ships has 1500 when the Empress employees on board are included) has no supervisor on board *at any time*, making the situation, in the Board's view, a little like that of the *Patna* in Conrad's novel *Lord Jim* after the crew abandoned it. We grant that the idea of a completely unsupervised vessel is, although implausible, *Spentonbush/Red Star Cos. v. NLRB*, 106 F.3d 484, 487–92 (2d Cir.1997); cf. *American Diversified Foods, Inc. v. NLRB*, 640 F.2d 893, 896 (7th Cir.1981); *Glenmark Associates, Inc. v. NLRB*, 147 F.3d 333, 341–42 (4th Cir.1998); *Grancare, Inc. v. NLRB*, 137 F.3d 372, 376 (6th Cir.1998), not completely preposterous. Airline pilots are allowed to bargain collectively, albeit normally under a different statute, the Railway Labor Act, with a more inclusive right to bargain, one that extends to "subordinate official[s]." 45 U.S.C. § 181; *Dorsey v. United Parcel Service*, 195 F.3d 814, 817 (6th Cir.1999). But the statutory difference to one side, most aircraft have very small crews, which has been critical in the few cases in which the National Labor Relations Act has been applied to pilots, see, e.g., *McDonnell Douglas Corp. v. NLRB*, 655 F.2d 932, 936–37 (9th Cir.1981); *Mourning v. NLRB*, 559 F.2d 768, 770–71 (D.C.Cir. 1977) (per curiam), and supervisory status is relative to employees rather than customers. But Empress's captains and first mates, at least, have significant supervisory responsibilities, involving hiring and discipline, see *Mon River Towing, Inc. v. NLRB*, 421 F.2d 1, 5–6 (3d Cir.1969); *Local 28, International Organization of Masters, etc. v. NLRB*, 321 F.2d 376 (D.C. Cir.1963), that have no counterpart, so far as we know, in the case of airplane pilots. It is true that any recommendation the officers make, whether to hire or fire, has to be approved by Gehrke, but the record indicates that their recommendations carry a great deal of weight.

▇ Some of the regional director's findings, such as that the captains conducted no interviews of job applicants after 1995, are flat wrong, and others are incomprehensible, such as classifying some post–1995 interviews of applicants as "meetings" without indicating the difference between meeting and interviewing an applicant. He laid great and mistaken emphasis on the fact that the officers don't have the final say in hiring or firing. This is true of most supervisors; a decision to hire or fire is often reviewed by several layers of management. What is critical is the *weight* of the first-line supervisor's recommendation in the final decision, and on this the regional director's opinion is completely unsatisfactory because of his unexplained failure to consider the company's current practices. He found, for example, that all job interviews "are conducted by the Port Captains, Port Engineers, or Marine Operations Manager," yet he also (and correctly) found that the positions of Port Captain and Port Engineer had been abolished. Gehrke's uncontradicted testimony was that the captains and first mates interviewed job applicants and that he relied heavily on their recommendations, and no more was necessary to show that those officers are supervisors, for the statutory term embraces not only individuals who have the authority to hire but also those who have the authority "effectively to recommend such action." 29 U.S.C. § 152(11); see *NLRB v. Winnebago Television Corp.*, 75 F.3d 1208, 1216 (7th Cir. 1996); *NLRB v. Res–Care, Inc.*, 705 F.2d 1461, 1467 (7th Cir.1983); *NLRB v. Attleboro Associates, Ltd.*, 176 F.3d 154, 164 (3d Cir.1999); *Glenmark Associates, Inc. v. NLRB, supra*, 147 F.3d at 342; *Caremore, Inc. v. NLRB*, 129 F.3d 365, 369–70 (6th Cir.1997). The contrary conclusion in *Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259, 1264 (11th Cir.1999), cannot be squared with the statute; the court there *approved* the Board's view, which flies in

the face of the statute, that since "the *ultimate* decision on personnel matters rested with ... [higher management], the [docking] pilots' advice on personnel matters did not meet the requirements of the statute," even though management *"never* made a personnel decision against the recommendations of the docking pilots." *Id.* (emphasis added).

■ Another disturbing feature of the regional director's decision (and the Board's silent affirmance) is the failure to consider the significance of the very low ratio of supervisors to nonsupervisory employees that the decision produced: one supervisor for hundreds of employees. The ratio of supervisors to supervised is a factor much emphasized in the cases, *NLRB. v. GranCare, Inc.*, 170 F.3d 662, 667 (7th Cir.1999) (en banc); *Children's Habilitation Center, Inc. v. NLRB, supra,* 887 F.2d at 132; *NLRB v. Hilliard Development Corp.*, 187 F.3d 133, 148 (1st Cir. 1999); *Beverly Enterprises v. NLRB, supra,* 148 F.3d at 1047–48; but see *NLRB v. Attleboro Associates, Ltd., supra,* 176 F.3d at 163 n. 5, and rightly so when we consider the purpose of exempting supervisors from the right to bargain collectively. (It is always helpful in interpreting a statute to consider its purpose.) A business cannot operate efficiently unless the employer has a team of employees he controls to whom he can delegate the essential supervisory functions that he cannot exercise personally. E.g., *Beasley v. Food Fair of North Carolina, Inc.*, 416 U.S. 653, 659–62, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974); *Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641*, 417 U.S. 790, 809–11, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974); *Children's Habilitation Center, Inc. v. NLRB, supra,* 887 F.2d at 131–32; *NLRB v. Res–Care, Inc., supra,* 705 F.2d at 1465; *NLRB v. Hilliard Development Corp., supra,* 187 F.3d at 148; *Health Care & Retirement Corp. of America v. NLRB,* 987 F.2d 1256, 1259 (6th Cir.1993), aff'd, 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994); *Schnuck Markets, Inc. v. NLRB,* 961 F.2d 700, 703 n. 7 (8th Cir.1992). For our purposes the employer is Gehrke, and the issue is whether he can manage these two boats, which are manned around the clock, from his shoreside office that he occupies during the normal workday, without any help from other employees who owe ·their undivided loyalty to the company. If he cannot, and all the officers are allowed to unionize, then the union rather than the company will control the riverboat casino operation; yet the National Labor Relations Act, precisely by excluding supervisors from its protections, rejects a syndicalist (that is, worker-controlled) conception of business. *NLRB v. Res–Care, Inc., supra,* 705 F.2d at 1465.

The evidence of significant delegation of supervisory functions such as hiring and discipline to the officers, especially the captains and first mates, is evidence that Gerhke cannot manage the riverboat casino operation all by himself. His most obvious incapacity—his practical inability to intervene in the event of an emergency on one of the boats when it is sailing up or down the river—is actually the least important. The cases distinguish between supervision and the exercise of professional judgment, *NLRB v. Health Care & Retirement Corp. of America,* 511 U.S. 571, 583, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994); *NLRB v. GranCare, Inc., supra,* 170 F.3d at 666–67; *Children's Habilitation Center, Inc. v. NLRB, supra,* 887 F.2d at 134; *Glenmark Associates, Inc. v. NLRB, supra,* 147 F.3d at 340; *NLRB v. Adco Electric Inc.,* 6 F.3d 1110, 1117 (5th Cir.1993), even though the latter often has an irreducible supervisory component. When a ship's captain orders the helmsman to steer the ship to starboard in order to avoid an iceberg, he is exercising professional judgment rather than shouldering one of the supervisory responsibilities of the shipowner's managers. But when he disciplines the helmsman in the name of the company for refusing to obey his order, he is acting as a statutory supervisor. The captains and first mates of the Em-

press's riverboats exercise statutory supervisory responsibilities too, in particular responsibility for personnel decisions, as well as merely keeping the boats afloat, on course, and safe. They play a big role not only in hiring and firing but also in evaluating employees for salary hikes, assigning and directing work, scheduling overtime, and training new employees. These are conventional supervisory functions. The officers are referred to in the company's employment manuals as supervisors, and it is not contended that this is a ruse or puffing. Compare *International Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 396 n. 13, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986); *J.L.M., Inc. v. NLRB*, 31 F.3d 79, 82 (2d Cir.1994); *NLRB v. Adco Electric Inc., supra*, 6 F.3d at 1117.

The evidence for the supervisory status of the captains and chief mates is conclusive; the status of the chief engineers is less clear, but as the regional director's opinion does not trace a rational connection between the facts bearing on the responsibilities of the chief engineers and the conclusion that they are not supervisors, the Board's order must be set aside with respect to them also and the case remanded to the Board. E.g., *International Union of Operating Engineers, Local 150 v. NLRB*, 755 F.2d 78, 81 (7th Cir.1985); *NLRB v. Beverly Enterprises–Massachusetts, Inc.*, 174 F.3d 13, 23 (1st Cir.1999).

The petition for review of the Board's order is therefore granted and enforcement of its order denied.