# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 2, 2020        Decided February 19, 2021

No. 20-1060

LEGGETT & PLATT, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

INTERNATIONAL ASSOCIATION OF MACHINISTS AND
AEROSPACE WORKERS,
INTERVENOR

———

Consolidated with 20-1061, 20-1134

———

On Petitions for Review and Cross-Application
for Enforcement of Orders of the
National Labor Relations Board

———

*A. John Harper III* argued the cause for petitioner Leggett & Platt, Inc. With him on the briefs were *Arthur T. Carter* and *Arrissa K. Meyer*.

*Aaron B. Solem* argued the cause for petitioner Keith Purvis. With him on the brief was *Glenn M. Taubman*.

*Barbara A. Sheehy*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Peter B. Robb*, General Counsel, *Ruth E. Burdick*, Acting Deputy Associate General Counsel, *David S. Habenstreit*, Assistant General Counsel, and *Elizabeth Heaney*, Supervisory Attorney.

Before: SRINIVASAN, *Chief Judge*, RAO, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Manufacturer Leggett & Platt, Inc. ("employer" or "company") petitions for review of NLRB orders which concluded, among other things, that employer had committed an unfair labor practice ("ULP") by withdrawing recognition from its employees' union based on a petition signed by a majority of the bargaining unit members seeking a withdrawal of recognition. The Board deemed this withdrawal of recognition unfair because of a later petition circulated by the union to the opposite effect, which the union had not disclosed to the employer at the time of the withdrawal of recognition. In reaching this decision, the Board expressly refused to retroactively apply a Board precedent ruling that employers engaging in the same conduct under similar circumstances do not commit unfair labor practices. In its precedential decision, the Board expressly determined that the

rule should be applied retroactively. Before the court, petitioner contends that the Board's decision departing from its precedent in this case was arbitrary and capricious. Because we agree, we grant in large part the employer's petition, though we deny as to a secondary ULP and deny the Board's cross-application for enforcement.

## I.   BACKGROUND

### A.   The Withdrawal of Recognition ULP

Petitioner is a manufacturer of household and commercial furniture. It operates a facility in Winchester, Kentucky, for the manufacture of innerspring mattresses in which it employs approximately 250 members of the bargaining unit involved in the present proceeding. At the time of the events underlying this proceeding, the bargaining unit employees were represented by the International Association of Machinists and Aerospace Workers, Local Lodge 619 ("union"). The employer's recognition of the unit had been embodied in a successive line of collective bargaining agreements ("CBA") beginning in September of 1965. At the times relevant to this controversy, the current CBA was effective from February 28, 2014, to February 28, 2017.

In December of 2016, Keith Purvis, a unit employee who has filed a separate petition now joined in this same proceeding, began circulating among the bargaining unit members a petition seeking decertification of the union. The operative language of the petition read:  "The undersigned employees of Leggett and Platt #002 do not want to be represented by IAM 619 hereafter referred to as 'union'." App. 245-64. Other employees assisted Purvis in the circulation of the petition. By December 19, a majority of the bargaining unit members had signed the petition, and Purvis presented it to the

plant's general manager, Chuck Denisio. Management employees of Leggett & Platt compared the signatures on the petition with employment records to verify the authenticity of the petition and confirmed that it was signed by a majority of the bargaining unit employees.

Based on that determination, on January 11, the company notified the union by mail that it had received evidence from a majority of the bargaining unit that they no longer wished to be represented by the union. Relying on the petition signed by a majority of the bargaining unit employees, the company advised the union of its intention to withdraw recognition and that it did not intend to negotiate a successor agreement. It did, however, express its intent to comply with the existing collective bargaining agreement through the scheduled expiration date.

On January 12, 2017, the company notified the bargaining unit employees of its intention to withdraw recognition effective March 1 and that it did not intend to bargain over a successor agreement. In its communication to employees, the company also notified them that it would effect several changes after the expiration of the CBA, including a wage increase, personal paid time off, lower health insurance deductibles, shorter periods of time to accrue vacation, implementation of a stock bonus plan, participation in a 401K plan, and changes in dental and vision insurance providers and to disability insurance benefits. As it had promised, the employer unilaterally withdrew recognition and effectuated its announced changes in the terms of employment on March 1.

At the same time that the above events were unfolding, the union began collecting signatures for a counterpetition supporting the continuance of recognition of the union's representation. The union's efforts began with an open house

at the union hall on January 18, 2017, and continued through February 28, the scheduled expiration date of the CBA. Eventually the union did obtain the signatures of a majority of the bargaining unit employees. This included 28 "cross-over" signers, that is, employees who signed both petitions. The employer disputes the validity of some of the signatures, contending that the open house had included sign-up sheets that did not specify that they were part of the petition. Nonetheless, a majority of employee signatures does appear on it. A critical fact underlying the current litigation is that the union never informed the management of the existence of the counter-petition or its claim to a counter-majority. Instead, it only informed Leggett & Platt by correspondence dated February 21, 2017, that: "By receipt of your letter dated January 11, 2017, you claim a majority of IAM represented employees no longer wish to be represented by the IAM. We do not believe your claim." App. 326.

The only other paragraph of the letter demanded bargaining but provided no further facts related to the disputed majority. The union filed a ULP complaint on March 1, still not having informed the employer of its counter-petition and claimed counter-majority.

## B. The Aiding ULP

While the proceedings relating to the first ULP were ongoing, Purvis and other employees circulated a second petition for decertification. Although that petition is being held in abeyance by the Board pending resolution of this proceeding, the union filed a complaint for an alleged ULP arising out of the circulation of the second petition. The second ULP involves an event in April when Steven Day, Human Resources Manager for employer, allegedly assisted in the circulation of the second decertification petition. According to

the allegations and the Board's findings, a newly hired bargaining unit employee, Cordell Roseberry, reported to work on his first day at Leggett & Platt on April 5. Roseberry testified that Steven Day "pointed at me and then he pointed at Purvis then he more like motioned me to walk over to Purvis." Roseberry did. Purvis asked him if he had signed any kind of petition and then asked him to meet him at his truck after work.

Day offered unrelated reasons for the gestures involved on the occasion, testifying that he directed the new employee to Purvis so that Purvis could introduce him to his new supervisor. The Administrative Law Judge hearing this case did not find him credible, particularly because Purvis never introduced Roseberry to his new supervisor. The union contended and the Board found that the employer had committed another unfair labor practice by "actively soliciting, encouraging, promoting, or providing assistance in the initiation, signing, or filing of an employee petition seeking to decertify the bargaining representative." *Enter. Leasing Co. of Fla. v. NLRB*, 831 F.3d 534, 545 (D.C. Cir. 2016).

## C. The Proceedings

After the union filed unfair labor practice charges against the employer, the General Counsel of the NLRB issued a complaint and notice of hearing on April 11, 2017, regarding the withdrawal of recognition and the subsequent changes in employment conditions. Later the General Counsel filed an amended complaint including both alleged ULPs. The case was assigned to an Administrative Law Judge, who conducted a hearing July 24-26, 2017. Purvis and other bargaining unit employees moved to intervene. The ALJ denied the intervention motion. This denial is the subject of Purvis's separate petition before this court.

The ALJ concluded that the employer had committed a ULP in violation of sections 8(a)(5) and (1) of the National Labor Relations Act by withdrawing recognition and thereafter changing conditions of employment without submitting to bargaining with the union. In so doing, the ALJ followed *Levitz Furniture Co. of the Pacific*, 333 NLRB 717 (2001), which explained that when an employer doubts that a union continues to enjoy majority support among employees, "Board elections are the preferred means of testing employees' support." 333 NLRB 717, 725-26 (2001). Absent a Board election conclusively showing a loss of majority support, the company withdraws recognition of the union only "at its peril." *Id.* at 725. Following *Levitz* and *Parkwood Developmental Center*, 347 NLRB 974 (2006), the ALJ ruled that Leggett & Platt had committed an unfair labor practice, and that it further violated section 8(a)(1) of the Act when the Human Resources Manager directed a new employee toward petitioner Purvis. The ALJ then ordered the remedies including a bargaining order requiring Leggett & Platt to recognize the union without holding an election, as Purvis and other employees had sought.

Thereafter, the Board affirmed the ALJ's findings and adopted essentially the same remedies, including the affirmative bargaining order. *Leggett & Platt, Inc.*, 367 NLRB No. 51, slip op. at 4-5 (2018). On January 8, 2019, Leggett petitioned this court for review of the Board decision. While that petition was pending, on July 3, 2019, the Board issued a decision in a parallel case, *Johnson Controls*, 368 NLRB No. 20, which also dealt with the withdrawal of recognition by an employer based on petition signatures. The Board in *Johnson Controls* overruled the *Levitz-Parkwood* rule upon which the ALJ had relied, criticizing that rule's facilitation of "the union's ability to gather its counter-evidence secretly, together with the 'peril' rule of *Levitz*." *Johnson Controls*, *supra*, slip op. at 2. In particular, the Board held "that proof of an

incumbent union's actual loss of majority support . . . conclusively rebuts the union's presumptive continuing majority status when the contract expires." *Id.* The union may no longer secretly gather signatures on a counterpetition to reestablish majority status; the only way it may reestablish majority status is "by filing a petition for a Board election within 45 days from the date the employer gives notice of an anticipatory withdrawal of recognition." *Id.* Crucially for this case, the Board also announced that its new procedures would apply retroactively "to all pending cases in whatever stage." *Id.* at 13 (citation omitted). At that point, at the Board's request, we remanded this case to the Board on August 7, 2019, for reconsideration in light of *Johnson Controls*. After remand, the Board determined that it would not apply *Johnson Controls* retroactively in this case and reaffirmed its original decision imposing the bargaining order. After unsuccessfully seeking reconsideration from the Board, Leggett & Platt filed the present petition.

## II.  ANALYSIS

### A.  The Withdrawal of Recognition

The major issue in Leggett & Platt's petition for review addresses the Board's refusal to retroactively apply its precedent in *Johnson Controls*, *supra*, to this case. In *Johnson Controls*, as in the present case, an employer was accused of an unfair labor practice for asserting an anticipatory withdrawal of recognition when it had a decertification petition by bargain unit employees in hand. An anticipatory withdrawal occurs when the employer announces prior to the expiration of a CBA that it will not continue to recognize the union and will not bargain for a renewal of the CBA relationship. In *Johnson Controls*, as in the present case, the union had obtained a counter-petition with sufficient cross-signers to create a

majority opposing decertification. In each case, the union did not inform the employer of the existence of the second petition. Consistent with then-existing Board precedent, the Board was asked in each case to find an unfair labor practice by the employer despite the union having concealed its supposed majority until after filing the ULP complaint. In *Johnson Controls*, the Board, considering Judge Henderson's criticism of its prior practices in *Scomas of Sausalito, LLC v. NLRB*, 849 F.3d 1147, 1158-59 (D.C. Cir. 2017) (Henderson, J., concurring), announced a new standard applicable to this type of anticipatory withdrawal.[1] The Board specified that in cases such as this, the employer may rely on the majority signatories in the petition it has in hand to proceed to withdrawal.

Most specifically, the Board stated that "if, within a reasonable time before an existing collective-bargaining agreement expires, an employer receives evidence that the union has lost majority status, the employer may inform the union that it will withdraw recognition when the contract expires, and it may refuse to bargain or suspend bargaining for a successor contract." *Johnson Controls*, *supra*, slip op. at 9. The Board noted that the union then had several options, including "if the union wishes to reestablish its majority status, it must file an election petition." *Id.*

Of particular relevance to the employer's argument in this case, the Board expressly projected retroactive application of

---

[1] The Board in *Johnson Controls* characterized the majority opinion in *Scomas* as criticizing the Board's practice, but the Board relied primarily on Judge Henderson's separate concurrence in its order. *See, e.g., Johnson Controls*, *supra*, slip op. at 8 (citing *Scomas*, 849 F.3d at 1160 (Henderson, J., concurring)). Judge Henderson criticized *Levitz*, but the court forthrightly applied it, even while vacating the Board's bargaining order. *Compare Scomas*, 849 F.3d at 1155 with *id.* at 1158-60 (Henderson, J., concurring).

the "new rule." The Board observed that its "usual practice is to apply new policies and standards retroactively to all pending cases in whatever stage, unless retroactive application would work a manifest injustice." *Id.* at 13 (internal punctuation and citations omitted). The Board then expressly declared that "applying the rules adopted here retroactively and dismissing the complaint would not work a manifest injustice." *Id.* Briefly put, the employer argues that the Board's refusal to apply the rule adopted in *Johnson Controls* to the present case is erroneous, arbitrary, and capricious. We agree.

Ordinarily, when this court undertakes to determine whether retroactive application of a new rule that an agency produced in adjudication is appropriate, we undertake a balancing of the effects of retroactive application "against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). In this case, the Board has done the heavy lifting for us, by determining itself that it must apply the rule "retroactively to all pending cases in whatever stage, unless retroactive application would work a manifest injustice." *Johnson Controls*, *supra*, slip op. at 13 (internal quotations omitted). Our duty, then, becomes to apply the usual standard of administrative review, that is we must determine whether the Board's action was arbitrary or capricious. It was.

Courts have long recognized that "any agency's unexplained departure from prior agency determinations is inherently arbitrary and capricious in violation of APA § 706(2)(A)." *Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth.*, 404 F.3d 454, 457 (D.C. Cir. 2005) (internal quotations omitted). Therefore, an agency's "failure to follow its own well-established precedent without explanation is the very essence of arbitrariness." *Id.* at 457-58. Clearly, the

Board has departed from its prior established precedent by not applying the *Johnson Controls* standard retroactively to this case—*Johnson Controls* and this case are factually indistinguishable. We need then only determine in APA terms whether that departure is unexplained or, following the Board's own language in *Johnson Controls*, whether it would work a "manifest injustice."

We note that in the present case the Board's decision and order begins by acknowledging that this circuit has disapproved the routine use of bargaining orders like the one in this case. The Board further acknowledges that such an order

> must be justified by a reasoned analysis that includes an explicit balancing of three considerations: (1) the employees' [section] 7 rights; (2) whether other purposes of the Act override the rights of employees to choose their bargaining representatives; and (3) whether alternative remedies are adequate to remedy the violations of the Act.

*Leggett & Platt, Inc.*, *supra*, slip op. at 1 (quoting *Vincent Indus. Plastics v. NLRB*, 209 F.3d 727, 738 (D.C. Cir. 2000)). Therefore, for the Board's bargaining order to be upheld, the Board must have justified not only a reasoned departure from its own precedent, but also its choice of a remedy punishing the employees by depriving them of their right to choose their own representatives because of an allegedly unfair labor practice on the part of their employers. The Board fails in both undertakings.

Briefly reviewing *Johnson Controls*, the Board in that case considered facts directly parallel to the ones before it in this. That is, the employer had in hand a petition evidencing

majority support for decertification. The union thereafter possessed, but concealed, a petition indicating majority opposition to decertification. In *Johnson Controls*, the Board announced a new approach to anticipatory derecognition in cases with factual backgrounds like *Johnson Controls* and this case. Under the new approach, if a union loses majority support within 90 days of contract expiration, it can only reestablish majority support through an election or petition within 45 days. *Supra*, slip op. at 2. *Johnson Controls* stated that it would apply retroactively, so we remanded this case, at the NLRB's request, to allow the Board to determine how *Johnson Controls* would apply to this case in the face of its own decision that *Johnson Controls* would apply retroactively, "unless retroactive application would work a manifest injustice." *Id.* at 13.

To determine whether retroactivity would create a manifest injustice, the Board considers "the reliance of the parties on preexisting law, the effect of retroactivity on accomplishment of the purposes of the Act, and any particular injustice arising from retroactive application." *SNE Enters.*, 344 NLRB 673, 673 (2005). Since the Board expressly recognizes its own consistent practice of retroactively applying new policy to "all pending cases in whatever stage," *Leggett & Platt, Inc.*, *supra*, slip op. at 2, it appears that the Board has painted itself into a corner which it can escape only by demonstrating some manifest injustice. It hasn't. In discussing its decision not to apply retroactivity, the Board observes that in its original decision in this case it had relied on "long-established existing law under *Levitz*." *Id.* This is hardly different than any other case as to which retroactive application is considered. That is, retroactivity of a new policy generally supposes that the old policy was different. The Board then supposes that applying the revised policy under *Johnson Controls* to this case "would negate the Board's deliberate

determination to the contrary." *Id.* Of course it would. But again, that is what retroactivity is all about.

We then come to what may be the crux of the Board's real reasons for not applying *Johnson Controls* retroactively. The Board observes that the prior decision imposing the bargaining order "had been in effect for over [six] months before the issuance of *Johnson Controls*, [and] the parties should have been negotiating for, and perhaps could have reached, a new collective-bargaining agreement during the intervening period." *Id.* The Board then goes on to observe that reversing the bargaining order "would not only disrupt the bargaining relationship of the parties to this case but also incentivize parties to delay compliance with bargaining orders in the hope or expectation of a change in the law." *Id.* In other words, the Board's refusal to follow its usual and express retroactivity policy will be abandoned to punish the employer for having the temerity to appeal the original order to this court and to disincentivize later parties from such exercise of their rights. The Board has miserably failed to explain how it is a manifest injustice to recognize the party's right of appeal. *See* 29 U.S.C. § 160(f) ("Any person aggrieved by a final order of the Board . . . may obtain a review of such order . . . .").

With uncharacteristic brevity, the Board also declares that it has declined to apply *Johnson Controls* retroactively to this case for "institutional reasons."[2] It is not clear how an agency departing from its controlling precedent escapes the bonds of the arbitrary and capricious standard by reciting a conclusion

---

[2] The Board argues that the employer never raised to the Board its argument that the Board failed to adequately specify its institutional reasons and that we therefore cannot consider the argument. *See* 29 U.S.C. § 160(e). The Board's contention rests on little more than differences in the phrasing of the argument in the company's briefs to this court and those to the Board on rehearing.

without explanation. To say that this was an adequate explanation would gut that standard of all meaning.

Given our conclusion on the retroactivity issue, it is plain that the Board's bargaining order cannot stand. While we are perhaps exercising an excess of consideration for the Board, we will briefly note that the Board has not successfully demonstrated how the propriety of the bargaining order in this case is any different than in any of the numerous cases outlined in the Board's own opinion. *See Leggett & Platt, Inc.*, *supra*, slip op. at 1 (citing *Vincent Indus. Plastics v. NLRB*, 209 F.3d 727 (D.C. Cir. 2000); *Lee Lumber & Bldg. Material Corp. v. NLRB*, 117 F.3d 1454, 1462 (D.C. Cir. 1997); *Exxel/Atmos, Inc. v. NLRB*, 28 F.3d 1243, 1248 (D.C. Cir. 1994)).

As the Board recognized after that recitation of citations, for an affirmative bargaining order to survive judicial review, it must balance three considerations: "(1) the employees' [Section] 7 rights; (2) whether other purposes of the Act override the rights of employees to choose their bargaining representatives; and (3) whether alternative remedies are adequate to remedy the violations of the Act." *Id.* In an apparent effort to satisfy its need to address those considerations, the Board states, "(1) An affirmative bargaining order in this case vindicates the Section 7 right of employees who have been represented by the Union since 1965." *Id.* at 2. This of course does not take the present case outside the norm. Affirmative bargaining orders in anticipatory decertification cases presuppose that the employees have been represented by a union for some period of time.

Then the Board tells us, "(2) An affirmative bargaining order serves the purposes and policies of the Act by fostering meaningful collective bargaining and industrial peace, and by

removing the Respondent's incentive to delay bargaining in the hope of further discouraging support for the Union." *Id.* at 3. It is not clear how this sentence adds anything to this case not present in all other parallel cases. And "(3) A cease-and-desist order alone would be inadequate to remedy the Respondent's withdrawal of recognition, refusal to bargain, and unilateral changes." *Id.* Again, the Board is not telling us anything about this case that would not be true in all cases.

As with the retroactivity issue itself, the Board's attempt to justify extraordinary treatment does not come close to taking it outside the "essence of arbitrariness" stated above. Therefore, as to the decertification issue, we will grant the employer's petition and deny the Board's cross-application for enforcement of its orders.

## B.   The Assisting Issue

Petitioner does not fare so well, nor respondent so poorly, on this issue as with retroactivity. The employer argues that the NLRB erred by concluding that Leggett unlawfully aided Purvis's second petition for union decertification. An employer commits an unfair labor practice if it "actively solicit[s], encourag[es], promot[es], or provid[es] assistance in the initiation, signing, or filing of an employee petition seeking to decertify [a] bargaining representative." *Enter. Leasing*, 831 F.3d at 545. Anything more than ministerial aid, including allowing signature collection during work, violates the NLRA. *Id.* at 544-45. Leggett does not dispute that if Day actually directed Roseberry to speak to Purvis to get Roseberry to sign the decertification petition, it would amount to improper aid.

The only question, then, is whether substantial evidence supports the NLRB's finding that Day did direct Roseberry to Purvis to have Roseberry sign the petition. Substantial

evidence is lacking only when, considering the record as a whole, no reasonable factfinder could have made the same finding as the agency. *Inova Health Sys. v. NLRB*, 795 F.3d 68, 80 (D.C. Cir. 2015). Evidentiary review of NLRB findings is, and is meant to be, highly deferential. *Id.* We will not disturb the credibility determinations of an ALJ unless they are "hopelessly incredible, self-contradictory, or patently unsupportable." *Wayneview Care Center v. NLRB*, 664 F.3d 341, 364 (D.C. Cir. 2011). "Although an ALJ's credibility determinations are entitled to significant deference . . . they are not immune to judicial scrutiny." *Sutter East Bay Hosps. v. NLRB*, 687 F.3d 424, 438 (D.C. Cir. 2012).

Substantial evidence supports the NLRB's finding. The ALJ heard testimony from Day and Roseberry as to the events in question and determined that Roseberry's testimony was credible while Day's was not. The only reason that petitioner offers that we should disturb that credibility determination is that the ALJ could have credited both testimonies, as they do not necessarily conflict. Petitioner is probably correct that Roseberry could have seen and heard everything to which he testified, and Day could nevertheless have intended for Roseberry to meet with Purvis so that Purvis would introduce Roseberry to his new supervisor. The fact that Purvis never actually introduced Roseberry to his new supervisor makes that unlikely. But more importantly, the fact that the ALJ could have reconciled the two testimonies does not confer an obligation upon him to do so. Hearing the witnesses in the first instance, the ALJ believed Roseberry's testimony but did not believe Day's. It is the ALJ's job to choose which factual accounts are credible, not ours. We will not disturb the ALJ's determination and consequent finding.

We therefore deny employer's petition as to this issue. However, as the Board has treated these cases as one

throughout and entered a remedial order applicable both to the erroneous conclusion that the employer had committed an unfair labor practice with respect to the decertification as well as the assisting, we cannot grant the cross-application for enforcement. We therefore grant the employer's petition in part and deny it in part. We vacate the remedial order and remand for the adjudication of an appropriate remedy for the assisting ULP taken alone.

As to the separate petition of Purvis, we note both that the Board has wide discretion on intervention, but we do not wish to make a precedential decision on the standards that might be applicable since there seems to be no remaining harm from any error that might have been involved. We dismiss Purvis's petition as moot in light of our disposition of Leggett & Platt's petition. We further note that the Board has before it apparently a petition for an election. If that is correct, then it is difficult to see why the Board, if it is in fact concerned about the rights to choose representation of employees, does not simply proceed to order such an election. Be that as it may. The short conclusion is that employer's petition is granted in part and denied in part and the Board's cross-application is denied.

*So ordered.*